Meredith Holley
Meredith@ErisResolution.com
Law Office of Meredith Holley
207 E 5th Avenue, Suite 254
Eugene, OR 97401
Phone: (458) 221-2671
Fax: (833) 352-3615

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| SABRINA ANDERSON,<br>　　Plaintiff,<br><br>　　v.<br><br>PACIFIC RECYCLING, INC., an Oregon corporation,<br>　　Defendant. | Case No. 6:21-cv-00316<br><br>COMPLAINT<br>(Hostile Work Environment Discrimination, Disparate Treatment, Unpaid Wages, 42 U.S.C § 2000e *et seq*. and Oregon law)<br><br>*Demand for Jury Trial* |

## INTRODUCTION

1.

Sabrina Anderson was the only woman of color and the only lesbian working as a driver for Defendant throughout her employment. Ms. Anderson had a Class A driver's license, a higher ranking than her male colleagues. Defendant called Ms. Anderson one of its "best drivers," and coworkers describe her as "classy" and "professional."

Defendant, however, engaged in a pattern of, what a coworker describes as "torturing" Ms. Anderson because of her race, gender, and/or sexual orientation. Defendant restricted Ms. Anderson from using the restroom or taking breaks and

COMPLAINT – Page 1

allowed Ms. Anderson's coworkers to her using derogatory terms like, "dyke," "bitch," saying she had "caveman hair," and intentionally misidentifying her race by calling her a "Black girl." Defendant refused to respond to Ms. Anderson's requests for a pay increase based on her superior qualifications to her male coworkers. When one openly white supremacist coworker attempted to crash into Ms. Anderson's truck on Defendant's company property, Defendant failed to discipline that coworker. Defendant knew Ms. Anderson was being targeted because of her race, sex, and/or sexual orientation, and it failed to create a safe environment, free from discrimination.

On April 5, 2020, Defendant laid Ms. Anderson off, but retained its male drivers. Upon information and belief, Defendant failed to pay Ms. Anderson her final paycheck. On May 1, 2020, Defendant told Ms. Anderson it was considering bringing her back to work. Ms. Anderson asked what her hours would be and said she was concerned because she had not received her final paycheck. Defendant's General Manager called Ms. Anderson back screaming at her that he was "under the fucking impression she was refusing to come back to work." Ms. Anderson clarified that she was not refusing work, but she wanted to understand what the terms of work would be. Defendant called Ms. Anderson back later and told her to turn in her keys.

## JURISDICTION AND VENUE

2.

This matter arises under federal law, 42 U.S.C § 2000e *et seq*. Supplemental jurisdiction over related state law claims is proper under 28 U.S.C. § 1367.

The events underlying Plaintiff's claims took place in Lane County, Oregon, making venue proper in the District of Oregon, Eugene Division.

## PARTIES

3.

Plaintiff Sabrina Anderson is a resident of Lincoln County, Oregon. Sabrina Anderson is a woman, lesbian, and Filipina-American.

4.

Pacific Recycling, Inc., is an Oregon corporation with its principal place of business Lane County, Oregon. Defendant collects, purchases, and recycles scrap metal.

## FACTUAL ALLEGATIONS

5.

On August 13, 2018, Defendant hired Ms. Anderson as a driver. Throughout most of Ms. Anderson's employment with Defendant PRI, she was the only woman driver. At all times, Ms. Anderson was the only woman of color and the only lesbian in her department.

6.

Beginning in August 2018, Ms. Anderson's supervisor, Ginny Hanson, had the ability to monitor whether Ms. Anderson's truck was moving or not. Supervisor Hanson told Ms. Anderson that if she did not take a lunch break, her time card would be adjusted to show she had taken a lunch break. At that same time, Supervisor Hanson started treating Ms. Anderson differently than her male coworkers. For example, Supervisor Hanson did each of the following approximately every day during Ms. Anderson's employment:

a. Called Ms. Anderson on her cell phone, yelled, and cursed at Ms. Anderson any time her truck stopped, including any time Ms. Anderson tried to take a lunch break;

b. Called Ms. Anderson to reprimand her anytime tried to use her Bluetooth system to make a call that was not to Supervisor Hanson; and

c. Called Ms. Anderson to reprimand her if Ms. Anderson stopped the truck to use the restroom.

Supervisor Hanson did not behave this way with Ms. Anderson's white, male, heterosexual coworkers.

7.

Upon information and belief, Supervisor Hanson required Ms. Anderson to work through her lunch break more than 77 days during her employment. Supervisor Hanson required Ms. Anderson to work through a rest break around every time Ms. Anderson worked which was approximately 529 days.

8.

Sometime soon after Defendant hired Ms. Anderson, approximately December 2018 or January 2019, Defendant hired another employee who was a white man, David Reese. A coworker told Ms. Anderson that Reese called Ms. Anderson "the Black girl," "gay bitch," and "dyke" in the yard.

9.

Soon after Reese started working, in approximately January 2019, Ms. Anderson heard him call her a "dyke" and "Black." Ms. Anderson said, "I am islander and stop referring to me as things that are not my name. My name is Sabrina and referring to me as black is racist."

10.

The next day, also in approximately January 2019, Ms. Anderson reported to Supervisor Hanson and Defendant's Human Resources Department what Reese had said. Defendant did not respond to this complaint, and Reese continued to call Ms. Anderson derogatory names related to her gender, sexual orientation, and race.

11.

Later in January 2019, Ms. Anderson briefly left Defendant PRI to work for a different company. Ms. Anderson began working for Defendant again in March 2019. Even though Ms. Anderson had only been gone for a couple of months, Defendant returned her to training and said she would lose seniority. Upon information and belief, male drivers were allowed to return to work and maintain seniority.

12.

During training, Ms. Anderson noticed that Defendant withdrew money from her paycheck for a uniform, but she did not have a uniform. Supervisor Hanson told Ms. Anderson she was required to wear a polyester button-down shirt and provided one that did not fit Ms. Anderson. Ms. Anderson's male coworkers wore a pullover shirt, and Ms. Anderson requested to wear the same shirt as the men she worked with. Supervisor Hanson refused to allow Ms. Anderson to wear the same shirt as the men. Defendant continued to charge Ms. Anderson for a uniform she did not have until December 27, 2019.

13.

When Ms. Anderson returned to work for Defendant in March 2019, David Reese continued to harass her. For example, he called her a "dyke," a "Black bitch" approximately weekly. Ms. Anderson reported these comments to Supervisor

Hanson and Defendant's HR each time they occurred and Defendant did not respond. Supervisor Hanson and Defendant's HR person minimized these comments saying, Reese was just "talking shit."

14.

In October 2019, Ms. Anderson applied to put her partner on her health insurance. Upon information and belief, Ms. Anderson's heterosexual, male coworkers were allowed to put partners on their health insurance plan with Defendant. The Human Resources Department refused to put Ms. Anderson's girlfriend on her health insurance because of her race, sex, and/or sexual orientation.

15.

In October 2019, Ms. Anderson had worked for Defendant for more than 180 days and averaged more than 25 hours per week at this point in her employment. Defendant employed more than 25 employees who work more than 20 weeks during the year.

16.

Around October 2019, Ms. Anderson told Supervisor Hanson that she needed the day off to take care of her children because they were sick. Supervisor Hanson said, "Why can't she take care of her own kids?" referring to Ms. Anderson's partner, and discouraged her from taking the time off to care for the children. The children are biologically Ms. Anderson's partner's, but Ms. Anderson is their other primary caregiver. Supervisor Hanson consistently reprimanded Ms. Anderson if she tried to take breaks, and so Ms. Anderson was afraid of what would happen if she tried to take medical leave to care for her children. Ms. Anderson's partner missed an important work activity so that Ms. Anderson could continue working because Ms. Anderson was afraid she would be fired if she took time off to care for her children.

17.

In late October and early November 2019, Ms. Anderson went to Defendant's General Manager and asked him to intervene with Supervisor Hanson and Defendant's HR person two to three times per week. Ms. Anderson told the General Manager that she thought Supervisor Hanson and the HR person did not like her because she is gay. When Supervisor Hanson found out Ms. Anderson reported to the General Manager, Supervisor Hanson cornered Ms. Anderson in the hall and yelled at her, "Never fucking go to Thomas [the General Manager] again!" Ms. Anderson continued to report the discrimination and retaliation she was experiencing to Supervisor Hanson, Defendant's HR person, and Defendant's General Manager, but Defendant did not respond to create a safe work environment free from discrimination and harassment.

18.

In December 2019, Defendant PRI started a "Workshare" program through the Oregon Employment Department. Supervisor Hanson told Ms. Anderson she should work 32 hours to receive benefits. On December 16 and 23, 2019, and February 7, 2020, the Employment Department denied Ms. Anderson's claims, saying about the denials on December 23, 2019, and February 7, 2020, "Excess earnings reported," although Ms. Anderson followed Supervisor Hanson's instructions. Upon information and belief, Supervisor Hanson manually altered Ms. Anderson's hours. Upon information and belief, Supervisor Hanson instructed Ms. Anderson's male coworkers differently than Ms. Anderson regarding how to access Workshare benefits.

COMPLAINT – Page 7

19.

In January 2020, Defendant assigned Ms. Anderson to train a new driver, Jan Hicks. The new driver asked Ms. Anderson if she was gay. Ms. Anderson confirmed that she was.

20.

That night, Ms. Anderson looked the new driver up on Facebook because it seemed like his question had been homophobic. She discovered posts such as these:



COMPLAINT – Page 8



21.

In January 2020, several of Ms. Anderson's coworkers told her "that guy does not like you," referring to Hicks. Coworkers told Ms. Anderson that Hicks said, referring to Ms. Anderson, "She's a gay fucking idiot." Coworkers told Ms. Anderson that Hicks had swastika and confederate flag tattoos. Ms. Anderson reported to Supervisor Hanson and Defendant's HR that Hicks called her a "gay fucking idiot," and showed Supervisor Hanson racist and homophobic comments on his Facebook page. Supervisor Hanson told Ms. Anderson, "Just stay away from him," and otherwise Defendant did not respond.

22.

In late January or early February 2020, Hicks told Ms. Anderson she must be Black because her hair was curly. Hicks said Ms. Anderson had "caveman hair." Ms. Anderson ignored him, and again reported him to Supervisor Hanson and Defendant's HR. Again Supervisor Hanson and Defendant's HR person minimized the comments and did not respond.

23.

On February 13, 2020, Hicks drove directly at Ms. Anderson's truck while both were working. Ms. Anderson maneuvered out of the way and avoided a crash. Ms. Anderson reported the incident to Supervisor Hanson, explaining that she

COMPLAINT – Page 9

believed she was being targeted and reminded Supervisor Hansen of her reports of the new driver targeting her as a lesbian woman of color. Supervisor Hanson dismissed Ms. Anderson's concerns. On February 14, 2020, Ms. Anderson followed up about her complaint by text. Supervisor Hanson said she had spoken to the new driver. Upon information and belief, Defendant took no further action regarding the harassment Ms. Anderson was experiencing or the safety issue regarding the other driver's dangerous driving.

24.

In late February 2020, male coworkers locked Ms. Anderson out of the unisex bathroom in the work yard. When Ms. Anderson reported this, Supervisor Hanson explained to Ms. Anderson that her male co-workers were intentionally locking her out of the bathroom. White, male, heterosexual coworkers were not locked out of the bathroom. Ms. Anderson reported these incidents to Defendant's HR. Upon information and belief, Defendant took no action regarding this report to discipline or correct any of the white, male, heterosexual employees who locked Ms. Anderson out of the bathroom.

25.

In late February 2020, male co-workers held Defendant's breakroom closed from the inside so that Ms. Anderson could not enter the room and use the timeclock. White, heterosexual, male coworkers were not prevented from entering the breakroom. Ms. Anderson reported this incident to Supervisor Hanson. Upon information and belief, Defendant took no action regarding this report.

26.

In late February 2020, Ms. Anderson was working and touched a male coworker. Hicks saw the interaction and said, "You might not want to touch him because he'll make you go straight."

27.

From December 2019 through March 2020, Ms. Anderson asked Defendant PRI for a performance review and to be considered for a raise. Ms. Anderson has a Class A driver's license. Hicks had a Class B license, was new and inexperienced, but Defendant was paying him only $1 less per hour than Ms. Anderson. In April 2020, Ms. Anderson's supervisor gave her a positive performance review, saying that Ms. Anderson was one of Defendant's best drivers. Defendant refused to give Ms. Anderson a raise.

28.

On April 5, 2020, just after the performance review in which Defendant told Ms. Anderson she was one if its best drivers, Defendant told Ms. Anderson she was temporarily laid off. Upon information and belief, no white, male drivers employed by Defendant were laid off at the time.

29.

Upon information and belief, to be determined in discovery, Defendant has not paid Ms. Anderson her paycheck from the work directly before the temporary layoff on April 5, 2020.

30.

On May 1, 2020, Ms. Anderson's new supervisor called Ms. Anderson and said that she may be able to come back to work. Ms. Anderson asked what her hours would be and about the pay she had not received after she was laid off. The new supervisor said she would find out. Defendant's General Manager called Ms. Anderson and said, "I'm under the fucking impression you are not coming back to work." Ms. Anderson responded that she wanted to come back to work and had only asked about her schedule and outstanding pay. The manager hung up on her.

Soon after the second phone call, Ms. Anderson's new supervisor called and told her to turn in her keys.

31.

On May 27, 2020, Plaintiff filed a complaint with the Oregon Bureau of Labor and Industries and Federal Equal Employment Opportunity Commission.

32.

In June 2020, Plaintiff received her personnel records from Defendant. The time records Defendant provided fail to record time from the end of March 2019, on days when Plaintiff worked. Upon information and belief, there are other discrepancies in the time records Defendant provided.

33.

On December 1, 2020, the Oregon Bureau of Labor and Industries issued Plaintiff a 90-day right to sue letter. On December 23, 2020, the Federal Equal Employment Opportunity Commission issued Plaintiff a 90-day right to sue letter.

### FIRST CLAIM FOR RELIEF – ORS 659A.030
### PROTECTED CHARACTERISTIC DISCRIMINATION – HOSTILE WORK ENVIRONMENT

34.

Plaintiff repeats and realleges paragraphs 1-33 as though fully set forth.

35.

Defendant violated ORS 659A.030 by subjecting Plaintiff to unwanted, offensive verbal or physical conduct that was severe or pervasive enough to alter the conditions of Plaintiff's employment and create a work environment that a reasonable person in plaintiff's circumstances would consider to be abusive or hostile enough to alter the conditions of Plaintiff's employment. Plaintiff perceived the environment to be abusive or hostile. Defendant and/or members of Defendant's management knew or should have known of the harassment and

failed to take immediate, appropriate remedial action reasonably calculated to end the harassment as described above, culminating in Defendant taking the following tangible employment actions because of Plaintiff's race, sex, and/or sexual orientation:

a) Restricting Plaintiff's access to restrooms, breakrooms, and other facilities of Defendant, including but not limited to incidents in which Supervisor Hanson told Plaintiff not to stop her truck to access Defendant's facilities, as well as being prohibited from entry to Defendant's bathroom and breakroom, all because of her race, gender, and/or sexual orientation;

b) Prohibiting Plaintiff from accessing her Bluetooth devices because of her race, sex, and/or sexual orientation;

c) Restricting Plaintiff from using the uniform her male coworkers used, while charging her for a uniform she could not use, because of her race, sex, and/or sexual orientation;

d) Refusing to put Plaintiff's personal partner on her health insurance because of her race, sex, and/or sexual orientation;

e) Interfering with Plaintiff's legally protected medical leave to take care of her sick children because of her race, sex, and/or sexual orientation;

f) Refusing to maintain Plaintiff's seniority when she returned to work in March 2019 because of her race, sex, and/or sexual orientation;

g) Altering Plaintiff's work hours and/or instructing Plaintiff differently than her white, male, and/or heterosexual coworkers because of her race, sex, and/or sexual orientation;

h) Temporarily laying Plaintiff off because of her race, sex, and/or sexual orientation; and/or

    i) Ultimately terminating Plaintiff's employment because of her race, sex, and/or sexual orientation.

36.

Defendant's violations have caused and continue to cause Plaintiff financial and non-financial harms including wage loss, humiliation, stress, anxiety, sleeplessness, panic, degradation, and betrayal at experiencing repeated slurs and other discrimination against her protected characteristics, reporting those, and receiving no support or response from Defendant, the amount of which is to be determined by a jury at trial.

37.

Plaintiff is entitled to attorney fees under ORS 659A.885.

## SECOND CLAIM FOR RELIEF – TITLE VII
### PROTECTED CHARACTERISTIC DISCRIMINATION – HOSTILE WORK ENVIRONMENT

38.

Plaintiff repeats and realleges paragraphs 1-37 as though fully set forth.

39.

Defendant violated Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, *et seq.*, by subjecting Plaintiff to discriminatory slurs, yelling, differential treatment, and other unwanted, offensive verbal or physical conduct based on Plaintiff's race, sex, and/or sexual orientation as described above, which was severe or pervasive enough to alter the conditions of Plaintiff's employment and create a work environment that a reasonable person in plaintiff's circumstances would consider to be abusive or hostile enough to alter the conditions of Plaintiff's employment. Plaintiff perceived the environment to be abusive or hostile. Defendant and/or members of Defendant's management knew or should have

known of the harassment and failed to take immediate, appropriate remedial action reasonably calculated to end the harassment as described above, culminating in Defendant taking the following tangible employment actions because of Plaintiff's race, sex, and/or sexual orientation:

a) Restricting Plaintiff's access to restrooms, breakrooms, and other facilities of Defendant, including but not limited to incidents in which Supervisor Hanson told Plaintiff not to stop her truck to access Defendant's facilities, as well as being prohibited from entry to Defendant's bathroom and breakroom, all because of her race, gender, and/or sexual orientation;

b) Prohibiting Plaintiff from accessing her Bluetooth devices because of her race, sex, and/or sexual orientation;

c) Restricting Plaintiff from using the uniform her male coworkers used, while charging her for a uniform she could not use, because of her race, sex, and/or sexual orientation;

d) Refusing to put Plaintiff's personal partner on her health insurance because of her race, sex, and/or sexual orientation;

e) Interfering with Plaintiff's legally protected medical leave to take care of her sick children because of her race, sex, and/or sexual orientation;

f) Refusing to maintain Plaintiff's seniority when she returned to work in March 2019 because of her race, sex, and/or sexual orientation;

g) Altering Plaintiff's work hours and/or instructing Plaintiff differently than her white, male, and/or heterosexual coworkers because of her race, sex, and/or sexual orientation;

h) Temporarily laying Plaintiff off because of her race, sex, and/or sexual orientation; and/or

    i) Ultimately terminating Plaintiff's employment because of her race, sex, and/or sexual orientation.

40.

Defendant's violations have caused and continue to cause Plaintiff financial and non-financial harms including wage loss, humiliation, stress, anxiety, sleeplessness, panic, degradation, and betrayal at experiencing repeated slurs and other discrimination against her protected characteristics, reporting those, and receiving no support or response from Defendant, the amount of which is to be determined by a jury at trial.

41.

Under Title VII, 42 U.S.C. 2000e-2, Plaintiff is entitled to reasonable attorney fees and costs to be determined by the court.

### THIRD CLAIM FOR RELIEF – ORS 652.220
### WAGE DISCRIMINATION

42.

Plaintiff repeats and realleges paragraphs 1-41 as though fully set forth.

43.

Defendant violated ORS 659A.220 by discriminating against Plaintiff in her compensation compared to her white, male, heterosexual coworkers because of her race, sex, and/or sexual orientation as described above and incorporated herein.

44.

Defendant's violations have caused and continue to cause Plaintiff financial and non-financial harms including wage loss, humiliation, stress, anxiety, sleeplessness, panic, degradation, and betrayal at experiencing repeated slurs and other discrimination against her protected characteristics, reporting those, and

receiving no support or response from Defendant, the amount of which is to be determined by a jury at trial.

45.

Under ORS 652.230, Plaintiff is entitled to liquidated damages and reasonable attorney fees.

### FOURTH CLAIM FOR RELIEF – ORS 652.140
### UNPAID WAGES

46.

Plaintiff repeats and realleges paragraphs 1-45 as though fully set forth.

47.

Upon information and belief, Defendant failed to keep record of Plaintiff's work hours, as required by ORS 653.045, in late March 2020.

48.

Defendant violated ORS 652.140 by willfully failing to pay Plaintiff wages for work performed between March 12, 2020, and April 5, 2020, of an estimated amount of $1,400.

49.

Plaintiff sent a notice of nonpayment of wages to Defendant on February 25, 2021. Plaintiff intends to amend this complaint to allege penalties due under Oregon State law if wages are not remitted according to ORS 652.150.

50.

Plaintiff is entitled to recover liquidated damages and reasonable attorney fees and costs under ORS 653.055 and ORS 652.200.

_____

WHEREFORE, Plaintiff Sabrina Anderson prays for judgment against Defendant as follows:

(1) Economic damages in the form of expenses, wages withheld, and lost income in an amount to be determined at trial, and prejudgment interest thereon;

(2) Fair and reasonable compensatory damages to be determined at the time of trial;

(3) Liquidated damages;

(4) Penalties; and

(5) Reasonable attorney fees and costs incurred herein.

DATED this 1st day of March, 2021.

_____
Meredith Holley, OSB No. 125647
LAW OFFICE OF MEREDITH HOLLEY
207 E 5th Avenue, Suite 254
Eugene, OR 97401
Telephone: (458) 221-2671
Fax: (833) 352-3615
Attorney for Plaintiff

COMPLAINT – Page 18